Good morning. I'm Christopher Stender for the petitioner Maria Alejandra Vasquez De Alcantar. I'd like to reserve two minutes for rebuttal. Of course, I've had the benefit of hearing the Court's questions during the first case. I did not know they were related cases until this morning, but I'm going to try to take advantage of those questions that I heard and try to get to answering some of the questions that the Court has framed. Before you do that, are there any fundamental differences between the case that your client has and Cobian's case? Yes. What? I need more than Cobian needs. I have a 9-1-30 filing in 1998. I have an adjustment filing in 2000. And if it's the second filing date, the case fails. She doesn't have the seven years. If it's the original filing date, she would prevail as the immigration judge found. And, in fact, she was granted cancellation of removal in this case. I think the Court's first question is, what is the difference between the Family Unity Program and the adjustment of status? Both are creatures of statute, and they have qualifying regulations. Family Unity was authorized by Congress because it was for preference visas. In other words, applicants for lawful permanent residence who had a lengthy time to wait because their spouses were only lawful permanent residents as opposed to citizens had a wait of many, many years. And Congress, recognizing this, created the Family Unity Program where people could have a period of authorized stay in two-year increments, and it was called extended voluntary departure. In incident to that, they got a work permit, travel document, and they could wait here until their visa petition became available to them. What we have in the petitioner's case is an adjustment of status. There is no wait whatsoever for the adjustment of status. This is an immediate relative petition. The adjustment is available upon filing of that petition  So as soon as the government can grant it, she will become a lawful permanent resident. The delay in the process is for the adjudication of the petition by the government. Incident to that delay, which is on the government's behalf, she gets a work permit, she gets a travel permit, and she gets to remain in the country while that petition is being adjudicated. In fact, the petitioner in my case and in the previous cases is in a greater position than the petitioner in Garcia-Quintero was. The petitioner in Garcia-Quintero had to wait for the visa petition to become available, which could be 3, 4, 5, 6, 8 years. It's an unknown period of time. In the future, unlike our petitioners, there is no wait for the visa petition. Once it's approved, the adjustment can be granted. And I think that puts our petitioners in a much stronger position than the petitioner in Garcia-Quintero. Let me understand the facts here. The original visa petition, the original application, what happened after that? It was filed and approved. And again, the facts in my case are not in dispute. There could have been more factual development, but the judge issued a factual statement and the government stipulated to it, so I think they're bound by it regarding the work permit issuance and the dates of the case. I don't think there's any dispute on that. It's a pure legal issue. But what happened between the first and the second? There's a delay. I don't know. I was not the counsel of immigration, judge of the Board of Immigration Appeals. I didn't get to develop the record. But there's a filing in about, I can't give you the exact date, but it's August 6, 1998. The adjustment is not filed until 2000. The visa petition is filed in a form I-130. That was filed August 6, 1988. That makes the visa available. The actual adjustment of status is a separate form, a form I-45, which was filed in the year 2000. Those are the two competing dates and petitions. Now, the regulation. Everyone who gets, eventually gets an adjustment of status has to have the visa application approved, isn't it? That's correct. Just like in Garcia-Quintero, the difference is they were in a preference category. In Garcia-Quintero, we lose a lengthy wait. Therefore, Congress created the Family Unity Program to keep the people here because they had no protection from being removed. But I guess what you're really arguing with the sense of this is that we should move back. We should move back the date to the date of the visa rather than the actual adjustment of status. Well, two points, and I think I want to get to that. If the court, there is binding precedence, Garcia-Quintero, and if a person in a lesser status with a lengthier wait and less legal protection was admitted in, quote, any status, then this petitioner certainly was admitted in any status upon the filing of the I-130 petition. The regulation at 8 CFR 245.2A to Romanet I, capital B, permits the visa petition to be filed separately or concurrently, and it states specifically that it's properly filed either separately, concurrently, or separately. So what the petitioner did was acceptable. She could file first the I-130, then the adjustment, and the regulations permit that. But doesn't the statute 8 U.S.C. 1255 I-1 say that one who has this I-130 form, the best they have is they may apply to the attorney general for adjustment of her or his or her status to that of an alien lawfully admitted for permanent residence. That's what the statute says. True. So, therefore, it doesn't seem to me that this argument you're making has any benefit since the language of the statute only confers an ability to apply for the adjustment of status. Well, that's the beauty of the cancellation statute. There's a five-year requirement where you have to prove you're a lawful permanent resident. We're looking for the seven years, which is admission in any status. It's been interpreted quite broadly, as the Court already pointed out. The case of Blancas Lara, and, actually, you pointed it out, somebody came here on what's called a border crossing card for 72 hours, and they have to stay within a very strict period. They can overstay that for months, for years, for 10 years, and the BIA has already said, we're going to accept that, that that's admission in any status, notwithstanding they're an overstay, they have a prudent legal presence, they're here unlawfully, they're reportable, they have no work permit, they have no travel permit, they have nothing. Yes, but it's literally following the language of the statute. Well, this is the – Because there was an admission and a status. But the case law supports it, including the BIA's own case law. Rosas Ramirez, they said, you know, we're going to take an adjustment of status to equal an admission, even if the person entered without inspection. And this Court has held the same as Shivaraman. So the issue of how they entered and whether they were inspected and admitted, it doesn't turn on that. The case law is pretty clear about that. There's a broad definition of admission. But Shivaraman also notes from Ocampo-Durand v. Oshcroft that if entering without inspection authorization, the date is when the status is adjusted. So we're not talking about just the application. We're talking about the actual adjustment of the status. That's true. And bear in mind the opposite. If the application is made and the adjustment is denied, then they would have no status, and it was never granted, correct? And they would not be eligible for cancellation removal. Just like in Garcia-Quintero, they would have had the admission and any status, but there would have to be the lawful permanent residence status ultimately granted based on the adjustment. Factually, the cases are more similar than dissimilar, Garcia-Quintero and the present case. And, in fact, our case, I think, is quite a bit more compelling. I see I have a minute. Thirty-eight, I'll reserve it. Thank you. Would you explain what the rationale is of the seven-year residency? Because what I'm having trouble getting my mind around is that we're saying that the people are here attempting to go through an adjudicatory process that will result in an LPR adjustment of status so that they are here lawfully permanently as a resident. And the question of accruing the seven years is to prove something that Congress thought was important. And what is troubling me is that we will allow somebody who came in and overstayed and is here, as counsel just outlined, totally illegally, and yet the BIA is quite comfortable giving the time accumulation for residency purposes to that person, but not to somebody who has popped up, identified themselves, made the application, is here under authority of the government with some status that's certainly better than the person who came in and overstayed their visa and said, well, we're not just going to let that time here. Even though they're here and they're working, that can't count toward the seven years. What is the purpose of that? What is the logic of it? The policy behind cancellation of removal under subsection A for lawful permanent residence is what this court has found over and over again in an effort to keep families together that have been here for years and years, to give people who have lawful permanent residence status the ability to stay in the country when something happens. This case and the case the court heard earlier this morning, both notice to appear was issued and that time was stopped because both of the petitioners were caught smuggling individuals across the border. And as a lawful permanent resident, if you get caught smuggling individuals across the border, you become removable. And so for people who have... Even if it's your daughter. I'm sorry? Even if it's your daughter. No, if it's your daughter, there's an exception. If it's a family member, there's an exception. And that's... Yeah. Okay, I won't go to... But right. There's... Right. There are certain policy implications invoked with cancellation of removal that Congress has continued over time and changed between 212C and then the repeal of 212C and its jurisprudence. So those are the policy reasons behind the statute. Here, the difference between the five... One is that an aggravated felony was not committed, and that's not an issue in either of the cases this morning. One is that the individual must have been a lawful permanent resident for five years, which is also not an issue this morning. The reason why there aren't that many cases discussing this issue is because the third requirement, which is actually the second in the statute, is the admission in any status. And generally, there are... It's rarer that you see cases where someone has the five years and not the seven years. And it's clear under everything we've discussed that the admission under lawful permanent residence starts the five years, and also our position is that it starts the seven years. And the difference is that if somebody goes out of status, so if they were admitted as a student visa and then goes out under a student visa and then goes out of status for two years but then still has those seven years from first being admitted, they would be eligible for cancellation of removal. It's unfortunate when we come to situations like today where those facts just aren't presented. Does that answer your question? Well, not entirely. As I understand it, you say that they can... They accrue the five years, but they've got to wait two more years after that. It's not correct if it's in their position. So they've waited the five years, whereas the person who overstayed is accumulating the requisite two years before the five years are triggered. But they had been lawfully admitted two years prior. Well, yeah, for 72 hours, and then, you know, years later they come up and, yeah, so... But they were still lawfully admitted at some point at least two years prior. I know, but again, what's the purpose? That's a... You know, I fail to comprehend what is being achieved. If they're caught smuggling, yeah, but I don't know what the seven years has to do with that. That's just a... It's got to prove a time in country for some purpose, and I'm still trying to, as we work through these different permutations, which I appreciate your explaining them, I'm still having trouble understanding why in the family unity, for example, the board is... Well, they weren't, but we were willing to say family unity is a change, is any status change, and yet getting a work permit and going through the process is not enough to trigger, you know, accumulating the time. It puts them on par both in that category as well as somebody who is here blatantly illegally having to overstay their visa. What's important to consider is not what benefits are received by any applications. For example, filing an I-130, which is the visa application, renders no benefits, no employment authorization, no room for removal. I accept that. I did before. So all applications, immigration applications for any visa or for any other application, all come with very different benefits. Many of them are ancillary, including employment authorization. What's important in all the cases, including Garcia-Quintero, is that an application for something was approved, and in Garcia-Quintero, the application to be a member of the family unity program was approved. Okay, and in this case where the work permit issued, was that just automatic upon filing? In this case, in this specific case, the work permit wasn't issued until within the seven years, actually. The I-130 does not come with a work authorization. So there was no change in status other than just the filing of the application? Correct. All the I-130 does is establish a relationship. It renders no, it doesn't even allow someone to apply for advanced parole, whereas advanced parole is yet another application that someone makes if they're here. And they want to go out. They want to go out and come back into whatever they are. There's the language that says they're readmitted in the same status. Okay. Right. But I'm, okay, so how does one get the work permit? Again, it depends on where you are and at what. You file an I-130 for adjustment of status. If you're not eligible to get a work permit. Okay. So what triggered, if not in this case, in the prior case, triggered the work permit? Filing of an adjustment application comes with the ability to get a work permit. Okay. So somebody has to approve that. The work permit is a separate application. Yes. I'm going to pause before this. I believe the I-485 comes with an automatic, it's the same application for both. And same with the Family Unity Program. It's the same application for both. Well, you guys are just confused. But there's some visas that you have to file separate. It's an I-761. Yet another number to remember. But sometimes it's a separate application. Sometimes it's the same application. They're adjudicated by two separate parts of the agency. And they confer two separate reliefs. You can't lose your employment authorization or abilities to do things. Status, some might say. Right, some might say. But you can't lose your work authorization while you're in removal proceedings. You can't lose it pending voluntary departure. There's all sorts of differences between work authorization, which this court has recognized in many cases. But status really is, am I wrong? It seems to me that status really is a kind of a term of art in the statute. It is a term of art in the statute. And it's been defined as generally lawful status or without status are the two distinguishing terms. And in our decision in Quintero, we pushed it somewhat. Well, I'm not arguing with Quintero in this case. In Quintero, that person did have a status as a Family Unity Program beneficiary. So you agree that that is a status? Oh, that is a status. You're not saying the only status under the removal statute has to be LPR status? Oh, no. But in this case, there is a status. Thank you. Briefly, government counsel stated that something has to be approved in order for this to work. Well, something was approved. The adjustment of status was approved. There's an adjudication, and it's immediately available. And I want to make that forcefully. The difference between the Petitioner and Garcia-Quintero is they have to wait to apply for the adjustment of status. It's not available. In our Petitioner, it's immediately available. So something does get approved. It's the adjustment of status. What do you mean it's immediately approved? It's immediately approvable. It's immediately approvable upon filing. Right. It's approvable. Yes. And the I-130, coupled with the 485, which can be filed concurrently, gives the benefit of the work permit, the travel permit, and it is pending until it is fully adjudicated by the government. The only reason that there is any delay is because of government bureaucracy. It could be approved the day it's filed, and lawful permanent residence status would be granted as of the day of filing if they could interview them and grant it that day. Adjudication could take place immediately. But not family unity. They have to wait for a visa. For the visa petition to become available. Early on, I think it was in the first case. Well, just to clarify, in your case. I'm sorry, the first argument. No, I'm in your case, though. She said, counsel said that in your case there was no work permit issued. There was a work permit issued in my case. But it wasn't at the time of the I-130. That's correct. It was issued about two years later with the adjustment of status. And if you did that, you wouldn't have the seven years. That's correct. You want to go back to the I-130 date. I want to go way back, Judge. I want to go back as early as I can, because if I don't, I lose. Well, I understand where you're going. I just wanted to make sure that Judge Fischer understood. I understand. And he answered your question. Okay. I think we all understand now. I understand that. The time has expired. I'm slow, but sometimes sure. I don't think you're slow. One last point. I just want to. No? Time's up? Okay. One last point. Quickly. The petitioner in Garcia-Quintero also never traveled out and was admitted as a family unity. I think that was a question in the first case. The question that the court asked is whether his acceptance into the program renders him admitted in any status. It's the acceptance into the program. So does the acceptance of an adjustment of status render this petitioner admitted in any status? And I think it does. Thank you. Thank you. The case just argued is submitted. We've got one more here. Guevara versus. Next case, Guevara versus Holdert.
judges: Schroeder, Fisher, Smith N. R.